## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| DONNA JONES,<br>c/o Obed Law, PLLC<br>500 N Washington St., #17<br>Alexandria, VA 22314<br>        Plaintiff,<br><br>v.<br><br>FAIRFAX COUNTY SCHOOL BOARD,<br>8115 Gatehouse Road, Suite 5400<br>Falls Church, VA 22042<br>SERVE (PPS):<br>  Beverly Madeja,<br>  Clerk of the Board<br>  8115 Gatehouse Drive, Suite 5400<br>  Falls Church, VA 22042<br>        Defendant, | Civil Action No.: 1:23-cv- 359<br><br>COMPLAINT FOR VIOLATIONS OF<br>FEDERAL CIVIL RIGHTS PURSUANT<br>TO THE AMERICANS WITH<br>DISABILITIES ACT, DEMAND FOR<br>DAMAGES, AND JURY TRIAL |

## COMPLAINT

Plaintiff DONNA JONES, by and through undersigned counsel, brings this Complaint against Defendant FAIRFAX COUNTY SCHOOL BOARD ("FCSB"), and in support alleges:

## I. NATURE OF THIS ACTION

1.     This is a civil action against FCSB, which governs Fairfax County Public Schools ("FCPS") as FCPS's legal entity, brought pursuant to the Americans with Disability Act ("ADA") prohibiting discrimination against an employee on the basis of a disability, 42 U.S.C. §12101 et seq.; §12112; 29 CFR §1630.9. Defendant FCSB, largely through the actions of responsible management official Lori Gibson and Braddock Elementary School Principal Keisha Jackson-Muir, knowingly, or with reckless indifference to Plaintiff's rights, discriminated against Ms. Jones by: 1) Failing to make a reasonable accommodation for Ms. Jones' disability (Reactive

1

Airway Disease and relevant symptoms and effects (pulmonary nodules)); 2) Failing to engage in the interactive process by giving no consideration or weight to the medical opinions of Ms. Jones's condition, instead relying upon Principal Jackson-Muir's opinion on accommodation and Ms. Gibson's opinion on disability; and 3) Using threatening language FCPS routinely uses as policy in response to requests for accommodation which threatened to separate Ms. Jones from employment or force Ms. Jones to retire if she did not comply with the token "accommodation offer" from FCPS. *See also* Va. Code §22.1-295.2(B); Virginians with Disabilities Act ("VDA"), Va. Code §51.5-41 (1985).

## II. JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1343, 38 U.S.C. § 4323(b), and supplemental jurisdiction over the claims arising under Virginia law pursuant to 28 U.S.C. §1367.

3.      The United States District Court for the Eastern District of Virginia is a proper venue for this action under 38 U.S.C. § 4323(c)(2) because FCSB governs the Fairfax County Public Schools, which are located in Fairfax County, Virginia in this judicial district.  Additionally, venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to this action occurred in this district.

4.      This action arose in Fairfax County, Virginia; therefore, pursuant to Local Rule 3(C) it should be assigned to the Alexandria Division.

5.      Ms. Jones has fully exhausted her administrative remedies as she previously filed an EEOC complaint on or around December 11, 2022, Charge Number 570-2023-00584 (a true and accurate copy of which is attached as "Exhibit 1"), after which the EEOC issued a "Dismissal and Notice of Rights" and "Notice of Suit Rights" letter to Ms. Jones, mailed and emailed on

December 19, 2022 notifying Ms. Jones of her right to file her ADA claim in federal court within

ninety (90) days of receipt (a true and accurate copy of the letter is attached as "Exhibit 2").

6.      Upon information and belief, all statutory conditions precedent to the initiation of

this lawsuit have been fulfilled, or equitably complied with.

### III.    PARTIES

7.      FCSB is located at 8115 Gatehouse Road, Suite 5400, Falls Church, VA 22042.

8.      FCSB governs the FCPS system, which includes Braddock Elementary School

("Braddock Elementary") located at 7825 Heritage Dr, Annandale, VA 22003, where Ms. Jones

was employed as a School Resource Teacher between August of 2019 and July of 2022.

9.      FCPS is a Virginia state employer with more than 15 employees (and more than

500 employees).

10.     Lori Gibson is an individual employed by FCSB in the role titled "Senior ADA

Specialist", who, at all times, acted as an agent of FCSB as a Responsible Manager Official of

FCPS, and supervised and managed employee accommodation requests for FCPS.

11.     Ms. Jones, a resident of Springfield, Virginia, has been an employee of FCPS since

2005 and is still currently employed at FCPS.

### IV.    FACTS

#### Overview

12.     Ms. Jones was diagnosed with Reactive Airway Disease, a lung disease, which

occurs when trachea and bronchial tubes, which bring air to the lungs, are subjected to irritants

and breathable toxins, and consequently swell and cause breathing and respiratory problems,

similar to the symptoms of asthma.

13.     During the time Ms. Jones worked at Braddock Elementary, FCPS was undertaking significant construction throughout the entire Braddock Elementary campus, as well as in and around Ms. Jones's work environment.

14.     At the beginning of Ms. Jones's time at Braddock Elementary (August of 2019) Ms. Jones worked in "Room 2A" until March of 2020.

15.     From March 2020 to the end of January 2021/Beginning of February 2021 Ms. Jones worked from home during the time of the COVID-19 pandemic.

16.     Ms. Jones returned to in-person work at the end of January 2021/beginning of February 2021, where she continued working in Room 2A.

17.     In April of 2021, Principal Keisha Jackson-Muir moved Ms. Jones to "Room 38" because ongoing construction at Braddock Elementary was reaching the immediate area at and around Room 2A.

18.     By or at the beginning of the 2022-2023 school year (August of 2022), Ms. Jones transferred between FCPS schools, from Braddock Elementary to Graham Road Elementary School within the FCPS system.

19.     Ms. Jones personally initiated the application for transfer process in order to avoid the conditions which gave rise to this action.

**While at Braddock Elementary, Ms. Jones was Forced to Work in Workplace Conditions Deleterious to Her Health, Causing and Exacerbating Her Disability**

20.     FCPS was aware that Room 2A has had high levels of moisture preceding the time Ms. Jones worked in Room 2A and during the time Ms. Jones worked in Room 2A.

21.     Ms. Jones's work environment throughout her time at Braddock Elementary included exposure to breathable toxins, dust, and debris from ongoing construction.

22.     FCPS has recognized that humidity over 60% can be "a risk for poor air quality and mold growth" and that "dust and glue on furniture is a problem in many [FCPS] schools for mold growth.".

23.     In the summer of 2020 FCPS recognized that Braddock Elementary may have a fan coil problem where the "fan coils bring in more moisture from the outside into the classrooms" while running "24/7".

24.     Ms. Jones and co-workers observed air quality issues in Room 2A including experiencing symptoms of coughing, headaches, runny nose, and other adverse effects.

25.     Ms. Jones observed persistent breathing issues, coughing, headaches, runny nose, and other adverse respiratory effects while working in Room 2A, which she did not have previously.

26.     During the COVID-19 pandemic "work from home" period when Ms. Jones was at home and not at school, Ms. Jones's symptoms subsided.

27.     After the pandemic, Ms. Jones and a co-worker observed high-capacity moisture absorbers in Room 2A filled with a completely black substance, for which they notified the Principal. In approximately 5 weeks' time, they were instructed to bring, and did bring, all of the shelves and contents in Room 2A to Room 38.

28.     In June of 2021, FCPS found visible mold growth in Room 38 on multiple shelving units and a table all of which had previously been located in Room 2A when Ms. Jones was working in Room 2A.

29.     FCPS has recognized that Ms. Jones's second daily workspace, "Room 38", had visible mold growth, significant dust accumulation, improper ventilation, improper sealing of the ceiling and doorway(s), and other concerns.

30.     A December 16, 2021 test conducted on behalf of FCPS revealed that Mold "Penicillium/Aspergillus group counts in all rooms were slightly elevated and indicate that further cleaning is needed", to include Room 38 (and adjacent/nearby rooms).

31.     In an August 8, 2022 blood test for Ms. Jones, mold spores and mycotoxins ("mycotoxicity report") were found in her system, revealing abnormally elevated levels of Aspergillus (Ochratoxin A), Penicillium (Mycophenolic Acid), and Multiple Mold Species (Citrinin (Dihydrocitrinone DHC).

32.     Dr. Woeller, who analyzed the mycotoxicity report, indicated that it is "more likely" that environmental exposures, e.g. home, office, or school" were the source of the mycotoxins above.

33.     Ms. Jones and co-workers observed significant air quality issues while working in Room 38, open ceiling tiles, an orange residue on shelves, a musty odor, in addition to a non-functioning ventilation/heating and cooling unit.

34.     While working at Braddock Elementary, Ms. Jones observed and witnessed mold, dust, water damage, flooding, broken/malfunctioning ventilation equipment, potential dust from asbestos, an unsecured/unfinished working environment, chemical toxins, fumes, gas and tar smells, rodents and feces, and sewage smell.

35.     In a September 17, 2021 email, Principal Jackson-Muir alerted FCPS administration and the FCSB of significant concerns regarding the safety of students, faculty, and staff at Braddock Elementary due to ongoing construction, relevant concerns included "Construction work being performed during the school day", "Trucks with truck exhaust facing the building and our currently antiquated ventilation system sucking in the exhaust into classrooms and teachers needing to leave early, due to feeling ill", "smoke from machinery

[…]forming smoke clouds in the hallway (near gym—Door #4)". A true and accurate copy of portions of the email with relevant pages quoted language from the September 17, 2021 email is attached as "Exhibit 3".

36.     In a December 7, 2021 email from Mandy Stevens Jolly, FCPS Construction Safety Specialist, Ms. Jolly identified construction safety issues on the Braddock Elementary campus, and in and around Room 38, exposure of teachers and students to construction fumes, dust, debris, and improper ventilation and sealing conditions.  A true and accurate copy of the December 21, 2021 email between FCPS employees/managers and the construction company, with photo attachments is attached as "Exhibit 4".

37.     Room 38 had been subject to limited asbestos remediation which did not appear complete when Ms. Jones worked in Room 38 shortly after the "completion" of the remediation.

38.     Between June of 2021 and January 20, 2022, FCPS maintenance staff performed several attempts to remediate mold growth in Room 38.

39.     FCPS conducts basic air quality tests ("IAQ"s) searching for visible mold and dust, because dust and mold separately are breathable irritants and carry increased risks when combined together. FCPS remedies in the IAQs performed for Room 38 included use of a "biocide" chlorine bleach to wipe the mold away.

40.     However, use of biocide (e.g. chlorine bleach) is not a recommended treatment (EPA and OSHA) because "dead mold is still allergenic" and "a background level of mold spores may remain in the air". EPA Mold Remediation in Schools and Commercial Buildings Pamphlet; DOL/OSHA Bulletin.

41.     Upon information and belief, Mold produces "mycotoxins" which remain airborne after visible mold is eliminated. Mold spores often cannot be seen without magnification.

42.     Upon information and belief, Dust and debris can be comprised of numerous irritants, and can exacerbate a mold problem. Some molds "feast on everyday dust and dirt that gather in the most regions of a building" (and dust can include "dead or decaying matter" which molds flourish in). EPA Mold Remediation in Schools and Commercial Buildings Pamphlet; DOL/OSHA Bulletin.

43.     In December of 2021, Ms. Jones visited a pulmonologist regarding a persistent cough, nausea, and dizziness frequently occurring while at work.

44.     On January 12, 2022, at a small staff meeting Principal Jackson-Muir, Office of Facilities Management, and FCPS maintenance supervisor Guyron Brock informed Ms. Jones and other staff that Room 38 had a history of mold issues. FCPS has recognized that Ms. Jones's first daily workspace, "Room 2A", has a history of mold, moisture issues, and elevated humidity.

45.     A mix of breathable irritants, dust, mold, and toxins have caused Ms. Jones's Reactive Airway Disease and injuries, and exacerbated the same, during her time working at Braddock Elementary.

46.     From January 2022 through June of 2022, construction was ongoing at Braddock Elementary such that air quality in and around Ms. Jones's working environment during that time was deleterious to her health and condition.

47.     In June of 2022, Ms. Jones was informed that she acquired a secondary affliction, mycobacterium infection, non-TB type.

48.     Ms. Jones's mycotoxin infection is a byproduct of the susceptibility of Ms. Jones to infections due to her Reactive Airway Disease.

**FCPS Refused to Meaningfully Engage in the Interactive Process and Failed to Offer any Reasonable Accommodation to Ms. Jones**

49.     On or around January 28, 2022, at her doctor visit with pulmonologist Dr. Halabi, Ms. Jones was diagnosed with Reactive Airway Disease, having masses in her lungs (pulmonary nodules) limiting her breathing and respiratory system.

50.     On or around February 1, 2022, Ms. Jones contacted Ms. Gibson regarding her condition, her February 8, 2022 lung surgery, and to request teleworking as an accommodation.

51.     In a February 2, 2022 email, Ms. Gibson stated that, "Generally, telework is not approved for school-based positions while students are in the building" and "I'd be surprised if Ms. Jackson-Muir [Braddock Elementary Principal] is able to grant telework". Ms. Gibson stated again in another February 2 email, "I doubt your principal will be able to approve telework."

52.     Principal Jackson-Muir is neither a pulmonologist and nor a medical professional.

53.     In a subsequent email, Ms. Gibson stated that, "you need to qualify as a person with a disability in order to receive ADA accommodations" and that "[i]f you feel you are in need of accommodations for a disability, then please submit the form. I can't answer specific questions or issue a decision until I have the form. […]We have 30 days. With the volume, it's been taking us 2 to 3 weeks."

54.     As part of Ms. Jones's Reactive Airway Disease, pulmonary nodules (masses) had formed in Ms. Jones's lungs.

55.     Ms. Jones's pulmonologist Dr. Halabi faxed Ms. Jones's first request for accommodation on or around February 7, 2022 to Ms. Gibson and her FCPS ADA office,

requesting that Ms. Jones be provided the reasonable accommodation of telework. A true and accurate copy of the request is attached as "Exhibit 5".

56.    On this first request for accommodation, Ms. Jones stated, "I am asking for provisional telework […]for the duration of recovery following this lung procedure, as my work building is currently under construction with possible aggravating [sic] environmental factors to my breathing." *Id.*, p. 1.

57.    Dr. Halabi stated that Ms. Jones's condition was "possibly due to mold exposure at work" and "should improve when not exposed to mold", requesting telework for Ms. Jones from date of request (February 7, 2022) through February 28, 2022." *Id.*, p. 2.

58.    The February 7, 2022 request for reasonable accommodations clearly identified that Ms. Jones had masses in her lungs and a respiratory condition, and that the request to telework was made so that Ms. Jones could recover away from her work environment due to ongoing construction at Braddock Elementary and mold exposure.

59.    FCPS did not acknowledge the request from Ms. Jones's doctor, only claiming that her workplace was safe.

60.    Ms. Jones had her bronchoscopy on or around February 8, 2022 and thereafter suffered increased adverse physical effects of the surgery as well as further respiratory difficulties in her work environment.

61.    On or around February 15, 2022, Ms. Jones's pulmonologist Dr. Halabi submitted a second accommodation request for Ms. Jones to telework through March 31, 2022, conveyed to the FCPS ADA office to Ms. Gibson, to Principal Jackson-Muir, and the FCPS Equal Employment Relations Office.  A true and accurate copy of the request is attached as "Exhibit 6".

62.     Ms. Gibson told Ms. Jones on February 17, 2022 that FCPS would not provide accommodation as requested, stating that: "As we previously discussed, telework is not possible due to the essential functions of your job".

63.     Ms. Jones informed Ms. Gibson that all essential functions of her job could successfully be conducted over Zoom, as Ms. Jones's interactions with students had successfully been performed one-on-one or in small groups over Zoom, that Ms. Jones worked with math and science data without in-person interaction, and any faculty, grade level, or team meetings Ms. Jones participated in took place over Zoom.

64.     Ms. Gibson speciously asked Ms. Jones to offer other "accommodations" that FCPS "would accept" other than telework.

65.     Ms. Jones did not know how to respond because she knew she needed to telework to perform her work safely away from the workplace construction, breathable toxins, mold, and dust which caused and exacerbated the severity of her disease.

66.     Also on February 17, 2022 Ms. Jones experienced severe symptoms of shortness of breath and dizziness while at work.

67.     Exasperated, Ms. Jones went to her vehicle where she could safely remove her mask and left a voicemail with Catherine Carroll, FCPS's Director at its Office of Equity & Employee Relations, informing Ms. Carroll of her urgent medical needs, the denial of telework as an option, and reasserting her requests for accommodation and immediate help for her health and safety.

68.     Catherine Carroll did not respond to Ms. Jones, instead forwarded the voicemail to Ms. Gibson on February 23, 2022.

69.     On February 18, 2022, Ms. Gibson offered two false, or token, "accommodations".

70.     The first "accommodation" offered was the ability to telework on three Thursday mornings because the meetings during that time "are expected to continue virtually until spring break" and therefore "you are able to telework during [this] time until the move is made to in-person meetings." This amounted to no change in position for FCPS.

71.     The second "accommodation" offered was "[a]dditional PPE (gloves, masks, plexiglass)", which were already available to any and all FCPS employee.

72.     Ms. Gibson also denied the request for a 10-minute mask break per hour, "due to renovations and limited space".

73.     On February 23, 2022, upon receiving the voicemail intended for Ms. Carroll, Ms. Gibson responded to Ms. Jones by email, but ignored and did not address the substance, urgency, and gravity of the voicemail.

### Subsequent Requests for Accommodation

74.     On February 28, 2022, at an after school staff meeting, Principal Jackson-Muir notified all present staff that if any employee has any health issue or is compromised by working with unmasked colleagues and students as a result of the removal of the mask mandate, to complete and submit an FCPS ADA form to seek accommodation.

75.     In a February 28, 2022 email, Ms. Jones indicated to Ms. Gibson in that she could not safely work on school grounds because of her 75% exhale lung capacity and necessity to be free of breathable toxins, mold, dusts, and debris so that her shortness of breath and conditions could have a chance to improve.

76.     On March 2, 2022, Ms. Gibson responded with a letter rejecting telework as an accommodation and included language threatening to separate Ms. Jones from employment or

force Ms. Jones to retire if she did not accept FCPS's token and nominal accommodations of three already virtual meetings and additional PPE. The language included:

> "If you wish to rescind your acceptance and decline the offered accommodations, then we will move to the next step in the ADA process which involves reassignment. "[…I]f there are no open positions for which you qualify (meaning a reassignment is not possible), the next step in the ADA process would be for you to retire, resign, or FCPS would separate you from employment because you cannot be reasonably accommodated, and you can no longer fulfil the essential functions of your position. **Please let me know by COB on March 4, 2022** how you wish to proceed." A true and accurate copy of the March 2, 2022 email is attached as "Exhibit 7".

77.     FCPS's policy and practice regarding responding to employees who wanted more accommodations than offered was to include the language Ms. Gibson included in the email to Ms. Jones, in effect threatening to separate an employee from employment whenever an employee questioned the "accommodation" offered by FCPS.

78.     In a May 19, 2022 email from FCPS Assistant Division Counsel Julia Judkins confirmed that FCPS had no issue with the language, stating that the language Ms. Gibson used was "a matter-of fact laying out of the issues and options consistent with the ADA provisions."

79.     Ms. Judkins also blanketly stated that Ms. Gibson's conduct was "appropriate and expected under the ADA".

80.     On March 3, 2022 Ms. Jones emailed Principal Jackson-Muir explaining that she requested telework in part due to her vulnerability to "the Coronavirus and its variants", and questioned FCPS's continued denial of telework as an accommodation for her.

81.     Also on March 3, 2022 Ms. Jones emailed Principal Jackson-Muir explaining that she "felt intimidated, threatened, and disciplined by the harsh tone, bold type and deadline" in Ms. Gibson's correspondence regarding Ms. Jones's sincere request and medical need for accommodations.

82.     Principal Jackson-Muir and Ms. Gibson reiterated that they had provided the two "accommodations", and Ms. Gibson only offered an "in-person" meeting to "clarify matters or answer any remaining questions" but not to discuss changing the token "accommodations."

83.     On March 3, 2022, and then also on March 4, 2022, Principal Jackson-Muir emailed Ms. Jones instructing her that she could "contact EER" if she wanted her accommodations revisited, "EER" being the office Catherine Carroll was in charge of, where Ms. Jones had previously called but had simply been referred back to Ms. Gibson.

84.     Upon information and belief, at least one similarly situated FCPS employee at Braddock Elementary during the 2021-2022 school year received telework as an accommodation at a time when employees were expected to work in person.

85.     On April 25, 2022, Ms. Jones visited another doctor, Dr. Joshi of Inova Occupational Health Alexandria, who concluded that Ms. Jones developed shortness of breath and dizziness due to mold at work and confirmed that Ms. Jones had multiple nodules from April of 2022.

86.     On or around April 25, 2022, Dr. Halabi submitted a third request for reasonable accommodation for Ms. Jones to telework through May 31, 2022. A true and accurate copy of the third request is attached as "Exhibit 8".

87.     Upon information and belief, Ms. Gibson responded to Dr. Halabi by taking exception to the three accommodation requests he had sent on behalf of Ms. Jones.

88.     Ms. Gibson is neither a pulmonologist nor a medical professional.

89.     Ms. Jones had lung surgery on May 6, 2022, which negatively impacted Ms. Jones's health and took her body and lungs time to recover.

90.     On or around May 12, 2022, Dr. Williams, pulmonologist and colleague of Dr. Halabi, composed an open letter, ultimately delivered to FCPS, recommending Ms. Jones work from home and away from the school construction zone, indicating that Ms. Jones's respiratory problems "correspond with construction that had begun (and is ongoing) at her place of work" and that Ms. Jones has "had significant dust exposures" such that Ms. Jones "has occupational reactive airway disease/asthma due to the presence of dusts and molds." A true and accurate copy of the letter is attached as "Exhibit 9".

91.     FCPS, through Ms. Judkins, declined the requested accommodations from the May 12, 2022 letter.

92.     Ms. Jones has met the expectations of FCPS in performing her job duties despite having Reactive Airway Disease and a compromised respiratory system. However, Ms. Jones has struggled physically, mentally, and emotionally working in conditions detrimental to her health and well-being.

93.     Mr. Jones's Reactive Airway Disease, her compromised respiratory system, together with attendant infections and symptoms, substantially limit, and has limited, one or more of her major life activities, namely, but not limited to:

i.      Breathing;

ii.     Speaking;

iii.    Concentrating and thinking;

iv.     Communicating;

15

v.      Walking;

vi.     Working;

vii.    Endurance for all major life activities; and

viii.   Standing.

94.    Ms. Jones's Reactive Airway Disease has increased Ms. Jones's susceptibility to the adverse effects of COVID-19 such that Ms. Jones wears a mask around others, particularly at Braddock Elementary where numerous individuals in her work environment do not wear masks.

95.    Wearing a mask increases Ms. Jones's shortness of breath and breathing difficulties while also causing undue stress upon Ms. Jones at work.

96.    At all relevant times, Ms. Jones performed her job with FCPS within the legitimate expectations of FCPS.

**Ms. Jones Was Forced to Work in an Environment Deleterious to Her Health and Consequently Developed Additional Conditions while Exacerbating Her Disability**

97.    While working in Room 2A, Ms. Jones initially had moderate symptoms of persistent coughing, tiredness, and lightheadedness.

98.    When working from home during the COVID-19 pandemic, and during the summer of 2021, Ms. Jones's symptoms subsided.

99.    When Ms. Jones returned to work in August at the beginning of the 2021-2022 school year in Room 38, Ms. Jones's symptoms returned but increased in severity.

100.   Ms. Jones visited a doctor in December of 2021, and eventually had lung CT scans which showed 3 "tree in bud" nodules in her lungs dated December 30, 2021.

101.   At a staff meeting concerning Room 38 on January 12, 2022, Ms. Jones learned for the first time from FCPS that she had been working in an environment with mold.

102.    FCPS knew of mold issues within Ms. Jones's workspace since at least June of 2021, but did not inform Ms. Jones until the January 12, 2022 meeting.

103.    The January 2022 meeting prompted Ms. Jones to understand the connection between mold in her workspace, together with the significant dust, breathable toxins, and debris from the ongoing construction, and the respiratory symptoms that had been developing.

104.    Ms. Jones provided this information to Dr. Halabi, and thereafter submitted the first request for accommodations.

105.    After Ms. Jones's requests were denied in February and March of 2022, Ms. Jones had an April 4, 2023 CT scan which showed dozens of new "tree in bud" nodules, evidencing significant growth of masses in her lungs from the previous December 30, 2021 CT scan.

106.    A bronchoscopy of Ms. Jones's lung tissue from spring of 2022 showed evidence of growth of mixed upper respiratory flora.

107.    On June 9, 2022, Ms. Jones, submitted a letter to FCSB, sent via email to Karl Frisch one of its members, detailing FCPS's denial of reasonable accommodations and requesting reasonable accommodation.

108.    FCSB never responded to the June 9, 2022 letter.

109.    Ms. Jones, through her attorney Seth Obed, submitted an additional reasonable accommodation request on May 17, 2022 for telework through the end of the school year, additionally placing FCPS on notice that their threatening language to separate Ms. Jones from employment if she did not accept their accommodation was in contravention of the ADA.

110.    After 3 months of denying Ms. Jones's requests for accommodation, FCPS again denied the request to telework and only agreed that Ms. Jones could take sick leave for certain days remaining on the school year calendar.

111.     A July 14, 2022 CT scan showed similar nodules in Ms. Jones's lungs to the April 4 CT Scan.

112.     A November 23, 2022 CT scan, months after Ms. Jones had left the Braddock Elementary school working environment, evidenced a minimal decrease in size of nodules in Ms. Jones's lungs.

113.     As a result of the Reactive Airway Disease and prolonged exposure to breathable toxins, dust, debris, and mold in the workplace after requesting telework, Ms. Jones has suffered adverse side effects of medications and treatment for the diseases, to include heart palpitations, GI symptoms, diarrhea, vomiting, nausea, fatigue, vision loss, abnormal kidney function, acquired obstructive sleep apnea, teeth grinding, Ms. Jones has also suffered anxiety, panic attacks, feelings of anguish and despair, loss of ability to enjoy hobbies or physical activity, and inability to perform daily tasks.

114.     Ms. Jones has had to attend over 60 doctor's appointments over the last 12 months, incurring medical costs for visits, costs of prescriptions, costs of travel to and from doctor's appointments, and time lost for such visits, in addition to therapy visits for anxiety and panic attacks.

115.     FCPS failed to provide meaningful accommodations, or any actual accommodations, for Ms. Jones's disease, such that Ms. Jones's injuries worsened and she was forced to take significant sick leave in order to gain any respite from her workplace demands and environment.

116.     By the start of the 2022-2023 school year, Ms. Jones had, through her own efforts, transferred to another school within the FCPS system. Her symptoms and disease still cause significant problems for her daily tasks and quality of life at work and at home. Her

injuries and symptoms seem to be improving but appear to have lasting effects, such that Ms. Jones likely will be forced into an early retirement, which will decrease her retirement pension.

117.    Ms. Jones was subjected to contributing factors leading to her diseases and injuries from her workplace at Braddock Elementary School from the time she began working there as a Resource Teacher in 2019.

118.    Ms. Jones has not observed any factor outside of work which has contributed to the development of her injuries and diseases.

## V.    STATEMENT OF CLAIMS

### CLAIMS I-III (facts and damages in common):

**(I) UNLAWFUL DISCRIMINATION ON THE BASIS OF A DISABILITY (REACTIVE AIRWAY DISEASE); (II) FAILURE TO ACCOMMODATE; and (III) RETALIATION FOR PURSUING ACCOMMODATION; in contravention of 42 U.S.C. §12112 (§12111 et seq.); 29 CFR §1630.9; and the ADA generally (42 U.S.C. §12101 et seq.) (See also Va. Code §22.1-295.2(B); Virginians with Disabilities Act ("VDA"), Va. Code §51.5-41 (1985); FCPS Regulation 1450.4, §4))**

119.    All prior paragraphs are incorporated herein by reference.

120.    FCPS, through FCSB, is a covered entity under 42 U.S.C. §12111(2).

121.    Ms. Jones, having Reactive Airway Disease, is a member of the protected class under the ADA, having a disability substantially limiting numerous life activities.

122.    The lung masses (pulmonary nodules) in Ms. Jones's lungs constituted a disability in conjunction with the Reactive Airway Disease.

123.    FCPS, Ms. Gibson, and supervisors at Braddock Elementary, were aware of Ms. Jones's lung disability, Reactive Airway Disease, and were aware, or should have been aware, of Ms. Jones's need for reasonable accommodation.

124.    In reviewing Ms. Jones's requests for accommodation, Ms. Gibson and Principal Jackson-Muir failed to give any weight to the medical opinion of Dr. Halabi and failed to give any weight to the symptoms and problems Ms. Jones reported to them from working in-person at FCPS despite knowledge of the hazardous air quality from ongoing construction at Braddock Elementary and Ms. Jones's enhanced susceptibility to such conditions.

125.    FCPS failed to engage in the interactive process to provide a reasonable accommodation for Ms. Jones's disability after having reason to know of Ms. Jones's need for accommodation.

126.    FCPS only cited boilerplate language such as "essential functions of the job" without any meaningful analysis of Ms. Jones's actual job description or responsibilities (just an inaccurate recitation of Ms. Jones's job responsibilities provided after denying Ms. Jones telework) with respect to her ability to telework and without any meaningful balancing of the health of Ms. Jones given her physical condition and susceptibility to air quality, COVID-19, and the necessity for Ms. Jones's health to be given a chance to improve without the stress of masking and working in an environment full of breathable toxins, dust, and mold.

127.    Telework for Ms. Jones had been successfully accomplished during the COVID-19 pandemic, and could be successfully accomplished from February 2022 through June 2022 for Ms. Jones at Braddock Elementary.

128.    The telework requested by Ms. Jones posed no undue hardship to FCPS and would not impact her ability to perform her essential job functions.

129.    FCPS failed to provide reasonable accommodation for Ms. Jones's disability, leading to Ms. Jones having prolonged unnecessary exposure to breathable toxins, mold, dust, and debris causing additional damages to Ms. Jones's health and wellness.

130.    FCPS knew or should have known of the dangerous toxins, mold, dust, and debris in Ms. Jones's workplace during the time of construction and time of Ms. Jones working at Braddock Elementary, particularly from January 2022 to June of 2022.

131.    FCPS knew or should have known that the dangerous conditions posed a particular danger to Ms. Jones given her disability.

132.    FCPS, through Ms. Gibson, exerted undue pressure upon Ms. Jones to deny her requests for telework.

133.    FCPS unreasonably delayed Ms. Jones's request for accommodation, and only offered token accommodations which were not different than what was already available to Ms. Jones or any FCPS employee.

134.    With wanton disregard and/or intentional disregard to the health and well-being of Ms. Jones, FCPS took adverse action against Ms. Jones by threatening to separate Ms. Jones from employment if Ms. Jones did not accept the token offer of accommodation, thereby forcing Ms. Jones to work in an unsafe working environment with respect to her disability.

135.    In order to comply with FCPS's demands, Ms. Jones continued working under the unsafe working conditions at Braddock Elementary.

136.    FCPS maintained that Ms. Jones's workplace was safe despite knowledge that the air quality in and around her working environment posed a hazardous threat to any person breathing it, and especially to her considering her respiratory conditions.

137.    As a direct and proximate cause of FCSB's discriminatory and retaliatory policy to threaten ending Ms. Jones's employment, Ms. Jones was deprived of the right to perform work safely in light of her disability.

138.    As a direct and proximate cause of FCSB's unlawful conduct in violation of the ADA, Ms. Jones has suffered economic damages and benefits of employment in an amount to be proved at trial, and non-economic damages for significant loss of quality of life, pain and suffering, and emotional distress.

139.    FCPS routinely included, and upon information and belief still includes, language threatening to separate an employee from employment, or resign, if an employee does not accept FCPS's offer of employment, and Ms. Jones received this threatening language.

140.    FCPS's inclusion of such language demonstrates an institutional failure to understand the interactive process, an institutional failure to understand whether or not an employee can "perform the essential functions of the job", and an institutional failure to understand the purpose and spirit of reasonable accommodation under the ADA.

141.    FCPS's inclusion of such language amounted to a policy for handling ADA accommodation requests, and is discriminatory and retaliatory on its face.

142.    As a direct and proximate cause of FCSP's unlawful policy in contravention of the ADA to threaten separation from employment, Ms. Jones has suffered economic damages and benefits of employment in an amount to be proved at trial, and non-economic damages for significant loss of quality of life, pain and suffering, and emotional distress.

WHEREFORE, Ms. Jones requests under the ADA 42 U.S.C. §12101 et seq.:

A.    Compensation for all injury and damages suffered by Ms. Jones including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial

including back pay, front pay, pre-judgment and post-judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages, and punitive damages as provided by law;

B.      Plaintiff's reasonable attorneys' fees, expert fees, and costs as provided by law and 42 U.S.C. §12205;

C.      For such equitable relief necessary to make Ms. Jones whole;

D.      For Injunctive and Declaratory Relief declaring FCPS's policy of using threatening language in its offers of accommodation to be in contravention of the ADA,  and enjoining Defendant to cease and desist its policy or use of any  threatening language in response to employees requests for reasonable accommodation, and enjoining Defendant to comply with the ADA in the interactive process; and

E.      For such other and further relief as this Court deems just and equitable.

DATED: March 17, 2023.            DONNA JONES, *Plaintiff*
                                  By Counsel:

                                  OBED LAW, PLLC

                        By: _____/s/_____
                                  Seth James B. Obed, VSB #82482
                                  OBED LAW, PLLC
                                  500 N Washington St., #17
                                  Alexandria, VA 22314
                                  [t](703) 567-4052; [f](703) 894-4940
                                  sobed@obedlaw.com
                                  ***Counsel for Plaintiff***

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38 or any similar rule of law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

                        By: _____/s/_____
                                  Seth James B. Obed, VSB # 82482

23