**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

DONNA JONES,

                          Plaintiff,

v.

                                                                    Civil Action No.: 1:23-cv-359-AJT-LRV

FAIRFAX COUNTY SCHOOL BOARD,

                          Defendant,

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Laurie L. Kirkland, VSB No. 75320
Dana Leinbach, VSB No. 95866
BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
703-691-1235 (telephone)
703-691-3913 (facsimile)
*Counsel for Defendant Fairfax County School Board*

# **Table of Contents**

Preliminary Statement ........................................................................................................ 1

Argument ........................................................................................................................... 2

   I.   Ms. Jones Has Not Raised Any Genuine Issue of Material Fact.............................. 2

      A.   Ms. Jones Fails to Create Any Genuine Dispute of Material Fact as to the Essential Functions of Her Position as a Resource Teacher. ............................................. 3

      B.   Ms. Jones' Partial Disputes as to Renovations at Braddock ES Are Immaterial. ............ 4

      C.   Ms. Jones Raises No Genuine Dispute Regarding Mold Testing and Remediation. ....... 5

      D.   No Genuine Dispute Exists as to Parties' Engaging in the Interactive Process. ............. 6

      E.   Ms. Jones' Additional Facts Do Not Preclude Summary Judgment. ............................. 9

   II.  Based on the Undisputed Material Facts, the School Board Is Entitled to Summary Judgment as to Ms. Jones' Claim of Failure to Accommodate ........................................... 10

      A.   The ADA Did Not Require the School Board to Grant Five-Days-a-Week Telework.. 10

          1.   No Record Evidence Supports Ms. Jones' Contention that the School Board Misunderstood the Scope of Her Request for Telework. ........................................ 10

          2.   The Undisputed Material Facts Support that Ms. Jones Could Not Perform All Essential Functions of Her Job Via Telework. ......................................................... 11

          3.   No Evidence Supports Ms. Jones' Claim that the School Board "Changed Her Job Functions to Include Substitute Teaching" to Avoid Accommodating Her ............ 13

      B.   The School Board Reasonably Accommodated Ms. Jones Even If It Did Not Grant Her the Exact Accommodation She Preferred ............................................................... 15

          1.   Dr. Halabi's Recommendation Was to Avoid Exposure to Mold, and the School Board Understood and Ensured as Much. ............................................................... 15

          2.   Although the School Board Had Remediated Mold and Relocated Ms. Jones, It Granted Her Additional Accommodations of Partial Telework and PPE. .............. 17

          3.   That the School Board Already Had Relocated Ms. Jones Out of the Portion of the Building under Construction in April 2022 Is Not Immaterial to Dr. William's Recommendation to So Relocate Her ................................................................... 18

          4.   The School Board Granted All Requsted Leave as an Accommodations ............... 19

Conclusion ....................................................................................................................... 20

**Preliminary Statement**

In her Complaint as well as in opposition to the School Board's Motion for Summary Judgment, Ms. Jones claims that certain conditions at Braddock Elementary School ("Braddock ES") caused her disability of reactive airway disease by allegedly exposing her to mold, toxins, and dust beginning in 2019. Ms. Jones has a remedy through the Virginia Workers' Compensation Act for any injury she sustained on the job, but the cause of her disability is neither the issue for this motion nor for this case. Instead, the sole issue is whether the School Board failed to reasonably accommodate Ms. Jones' disability of reactive airway disease—regardless of its cause—after January 30, 2022, to the extent required by the Americans with Disabilities Act ("ADA").

In arguing that the School Board failed to accommodate her disability under the ADA, Ms. Jones had alleged that the School Board made only two accommodations: partial telework on Thursday mornings from mid-February to mid-April 2022 and the provision of personal protective equipment ("PPE"). (Compl. ¶¶ 69-71.) In moving for summary judgment, the School Board did not "all but abandon" these two accommodations as Ms. Jones contends (Opp. at 1); rather, the School Board explained why telework five-days-a-week as Ms. Jones requested was not reasonable and the School Board took issue with Ms. Jones' overly narrow view of the accommodations that the School Board had made—and continued to make—both before and after it became aware of her requests for accommodation of a disability and her pulmonologists' recommendations. That some of the School Board's modifications or adjustments already were in place prior to Ms. Jones' requests for accommodation of a disability does not render such accommodations ineffective.

Indeed, the School Board cannot remediate mold in Ms. Jones' workspace after receiving a February 7, 2022 request from her pulmonologist *if the School Board already remediated the mold the prior summer*. And the School Board cannot relocate Ms. Jones out of Room 38 where she fears a "history" of moisture after February 7, 2022, *if the School Board already granted Ms.*

1

*Jones' request to relocate in January 2022*. Likewise, the School Board cannot relocate Ms. Jones to an area of the building not under construction after May 12, 2022, *if it already has done so*. Yet, that the School Board already had taken these actions, in addition to other accommodations provided, is relevant to whether the School Board complied with its obligations under the ADA.

Because the undisputed material facts reflect that the School Board reasonably accommodated Ms. Jones' disability, and, alternatively, that Ms. Jones' sole desired accommodation of telework, five-days-a-week for several weeks or months, was not reasonable because she admittedly could not perform all essential functions of her job as a Resource Teacher from home, the School Board is entitled to summary judgment in its favor.

## Argument

### I.    Ms. Jones Has Not Raised Any Genuine Issue of Material Fact.

Only a "genuine issue of material fact is sufficient to defeat a motion for summary judgment," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986), which genuine dispute exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. As *evidence* is required, Local Civil Rule 56 requires an opposition brief to support any dispute of material fact with citations to the record. Local Civ. R. 56. Where a non-movant offers "no admissible evidence to genuinely dispute material facts," a court should grant summary judgment. *Miller v. Va. Dept. of Corrs.*, 2012 WL 6042363, *1 (E.D. Va. Dec. 4, 2012).

In this case, Ms. Jones admits much of the School Board's Statement of Undisputed Facts ("SUMF"). (Opp. at 2-11, admitting SUMF 1-2, 6-7, 13, 21, 25-26, 32, 34, 43, and 52-54, and admitting in relevant part SUMF 11-12, 14, 16, 22, 28, 41-41, and 44.) In many cases, Ms. Jones purported to dispute facts by adding gratuitous unsupported or immaterial comments to them, but without record citations. (*See* Pl. Resp. to SUMF 8, 9, 16, 32, 34, 41, 45, and 52-54.) In these instances, these facts should be deemed admitted. Local Civ. R. 56. And because Ms. Jones'

supposed "disputes" with the remaining facts either are unsupported by admissible evidence or are immaterial, neither Ms. Jones' purported or partial disputes of the School Board's SUMF nor the addition of her own facts precludes summary judgment for the School Board in this case.

### A. Ms. Jones Fails to Create Any Genuine Dispute of Material Fact as to the Essential Functions of Her Position as a Resource Teacher.

#### 1. Ms. Jones Record Evidence *Supports* the School Board's Judgment that Not All of Her Essential Functions Could Be Performed from Home.

As to SUMF 4-6 and 10, Ms. Jones attempts to dispute the essential functions of her job and whether she could perform them from home, but her evidence supports the School Board's facts. (Opp. at 3). Preliminarily, the School Board had not intended to suggest that Ms. Jones spent "much of her day" directly managing inventory, but that Ms. Jones had testified that she spent much of her day in a resource room, "in which room she managed, ordered, separated, inventoried, and made ready for teachers" resource materials and met with teachers in person (SUMF 4; Def. Ex. 1 at 26), which functions Ms. Jones concedes she could not do from home. (PTX002 at Ex. A.)

Ms. Jones also attempts to dispute the School Board's position that she provided academic interventions in classrooms by citing to her declaration and to a job description she helped write, but Ms. Jones' declaration concedes that the 15% of her job that had to be performed onsite included student assessments and her job description confirms her role included "Partner[ing] with Teachers in the Classroom." (PTX017 at 3.) Ms. Jones also "disputes" SUMF 10, which contained a partial quote from her testimony, but she concedes that she testified, "I mean, obviously, it is better to be there" and suggests only that she meant "except when I needed respite from environmental factors." It remains undisputed that it was better to be onsite to perform her job.

#### 2. Ms. Jones Cannot Create a Dispute by Contradicting Her Own Testimony.

With respect to SUMF 3 and 51, in which the School Board included evidence that serving as a substitute teacher was an essential function of Ms. Jones' job, Ms. Jones disputes that this was

a job duty, citing only to her own declaration. (Opp. at 3, 11.) Yet, during her deposition, Ms. Jones

testified to Braddock ES's practice of utilizing resource teachers, like herself, as substitute

teachers. (Def. Ex. 1 at 195-96.) She also requested to be relieved of this duty in May 2022, and

while disputing it was a duty, she does not deny that she requested to be relieved of it. (Opp. at 11.)

Similarly, as to SUMF 55, there is no dispute that Ms. Jones transferred to another school

after the spring semester in 2022. The School Board had referenced Ms. Jones' testimony, in which

she explained that after she received HR's letter referencing reassignment as a next step, "it was

crossing [her] mind that, if they're going to put me somewhere or reassign me, I should find my

own space." (Def. Ex. 1 at 237-38.) Ms. Jones cannot create any genuine issue of material fact by

now stating she opted to transfer because she believed her job was in jeopardy. (Opp. at 12.)

Because Ms. Jones cannot create a genuine dispute of fact by contradicting her own prior

testimony, any such purported disputes in SUMF 3, 51, and 55 should be disregarded. *Williams v.

Genex Servs.*, LLC, 809 F.3d 103, 110 (4th Cir. 2015) ("It is well-settled that a plaintiff may not

avoid summary judgment by submitting contradictory evidence. To do so 'would greatly diminish

the utility of summary judgment as a procedure for screening out sham issues of fact.'" (quoting

*Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984)); *Alba v. Merrill Lynch & Co.*, 198 F.

App'x 288, 300 (4th Cir. 2006) (unpub.) ("It is well recognized that a plaintiff may not avoid

summary judgment by submitting an affidavit that conflicts with earlier deposition testimony.")).

**B.  Ms. Jones' Partial Disputes as to Renovations at Braddock ES Are Immaterial.**

Ms. Jones purports to disputes, in part, several facts relating to the Braddock ES renovation

project by adding immaterial comments to SUMF 11-13. (Opp. at 4). For example, it is not

material whether the project at Braddock ES is referred to as a "renovation" or "construction"

project. (Opp. at 4 (SUMF 11); PTX012-E at 40.) Similarly, it is not material that punch-list items

or minor repairs were made in the gym and newly constructed building after renovation had been

4

completed because, as discussed in Section II(B)(3) below, Ms. Jones presents no evidence that these minor items impacted her workspaces in any way. (Opp. at 4 (SUMF 12).) Further, it is not material that not *all* operations moved into the newly constructed building in April 2022, because Ms. Jones was exempted from any duties in those areas (*i.e.,* only the library and cafeteria) after she requested such accommodation. (Opp. at 4 (SUMF 12); *see* PTX005 at 120, 135, 146-47.)

**C. Ms. Jones Raises No Genuine Dispute Regarding Mold Testing and Remediation.**

As to SUMF 15, 17, 20, 22-24, Ms. Jones raises minor, purported disputes as to FCPS's environmental engineer's inspections and any remediation of mold before 2022, such as whether the amount of mold on furniture in June 2021 was "small", a typographic error misstating by a few weeks a date in a report in 2021, whether her air ventilator was working in the fall of 2021, and the reason for Mr. Brock's inspection of Room 38 in December 2021. (Opp. at 4-7.)

Notably, none of Ms. Jones' purported "disputes" are material to her claims because Ms. Jones offers *no record evidence* that the mold found on two pieces of furniture in Room 38 in June 2021 (regardless of whether the amount appropriately were characterized as "small") was not cleaned and remediated prior to September 2021; she offers *no evidence* that any mold was found in Room 38 in the spring of 2022 to dispute Mr. Brock's continued reports of no mold (Def. Ex. 8 at 106, 115; Def. Ex. 10), and she offers *no evidence* that mold was found in any other workspace to which she was relocated at her request in January 2022. (Opp. at 4-7.) That Ms. Jones characterizes Mr. Brock's indoor air quality results as "suspect" or chooses to emphasize one or two phrases from Mr. Robertson's December 2021 air quality report—omitting entirely the conclusion that "no mold or other indoor air quality issues exist in the areas observed and tested at Braddock ES"—simply is not evidence sufficient to raise any genuine issue as to the fact that by January 30, 2022, the School Board had remediated any discovered mold and, through repeated assessments, reasonably confirmed that no mold issue persisted in any of Ms. Jones' workspaces.

5

**D. No Genuine Dispute Exists as to Parties' Engaging in the Interactive Process.**

**1. Communications from Ms. Jones' Pulmonologists**

In attempting to create a genuine dispute of material fact, Ms. Jones largely takes issue with her own pulmonologists' paperwork by characterizing the School Board's standard ADA request form as "misleading." (Opp. at 8 (SUMF 29).) However, as the cited record supports, Dr. Halabi's paperwork made clear he recommended telework as an *alternative* accommodation to ensuring Ms. Jones' workspace was free of mold. (Def. Ex. 11, 13, 20; Dkt. 62-1, -2, -3 (unsealed versions).) Similarly, any "post-it note" apparently included by Dr. Halabi's office on one of the three sets of submitted paperwork (Opp. at 8) does not create a genuine dispute of material fact because, whether Dr. Halabi recommended leave until March 31, 2022, or telework until March 31, 2022, his stated reason for his recommendations remained "to ensure no mold at work." (Def. Ex. 13.)

With respect to her second pulmonologist, Dr. Williams, Ms. Jones also raises no genuine issue of fact. While she adds that Dr. Williams made conclusions based on his medical expertise and observes that the School Board did not independently evaluate her at that time (Opp. at 11 (SUMF 48)), these observations do not create any dispute, let alone any material dispute. Instead, the record reflects that the School Board *accepted* Dr. Williams' recommendations, including his conclusion that, if mold previously had been abated in her workspace, then another factor, such as dust, may be an issue for Ms. Jones. (Def. Ex. 4 at 152-155; Def. Ex. 21.) Likewise, the School Board *accepted* Dr. Williams recommendations that Ms. Jones *either* telework *or* be relocated from areas of construction by taking steps to ensure Ms. Jones' relocation and to guarantee that she would not be asked to work in the older part of the building then-under construction. (Def. Ex. 4 at 156-157; Def. Ex. 21; Def. Ex. 23.) While Ms. Jones adds that her relocation in April 2022 had been "because of construction phases, not because of any accommodation, (Opp. at 11 (SUMF 50)), the reason for her relocation is not material, as there is no dispute that it was done.

6

Similarly, Ms. Jones' purported dispute of SUMF 49 on the ground that "many areas of BES were under construction and construction was occurring campus-wide" is not supported by relevant record evidence. (Opp. at 11.) Specifically, Ms. Jones supports this "dispute" by citing to daily construction logs, none of which reflect any issue with mold or dust in the trailers or in the newly constructed building, much less any of her specific workspaces. (*See* PTX014 at 005-012, 014-016, 018, 083.) Rather, the logs reflect nothing more than maintenance and repair items that are immaterial to Dr. Williams' concerns regarding mold or dust in her workspaces. (*Id.*)

### 2. Communications Between Ms. Jones and Ms. Gibson

Likewise, Ms. Jones raises no genuine dispute as to SUMF 28, 30, 33, 35, and 36 regarding her communications with Ms. Gibson during the interactive process. (Opp. at 8-9.) The parties do not dispute that Ms. Jones requested telework due to a medical procedure on January 30, 2022, (Opp. at 8 (SUMF 28)), or that Ms. Gibson was not considering an accommodation at that point because Ms. Jones had advised her she was not sure her pulmonologist would recommend one (Opp. at 8 (SUMF 30); PTX012-F at 31-34). Further, Ms. Jones's cited record does not support that she was "forced to state" she may need to use sick leave (Opp; at 8 (SUMF 28); PTX005 at 001-009), though it is undisputed that she was granted leave as an accommodation (Def. Ex. 12).

As to SUMF 33, the School Board agrees that the correct date of Ms. Jones' and Ms. Gibson's phone call was February 17, 2022 (rather than February 18 as initially stated). (Opp. at 8 (SUMF 33)). However, Ms. Jones' claim that Ms. Gibson was not offering leave as an accommodation is unsupported by the record cited, which reflects that on February 17, 2022, Ms. Gibson referred Ms. Jones to the Office of Benefit Services for short-term disability, leave, and family medical leave. (PTX005 at 43.) There also is no dispute that while Ms. Jones believed she could perform her essential job functions by telework, Ms. Gibson advised her that telework is not generally accommodated with respect to school-based employees. (Opp. at 8-9.)

Ms. Jones' statements in response to SUMF 35 and 36 are not supported by the evidence

cited. (Opp. at 9.) The email that Ms. Jones now claims she wrote "under duress" reflects back-

and-forth communications, including Ms. Jones asking for feedback and providing clarification as

to her requests. (PTX005 at 43-44, 48, 50, 59.) To the extent Ms. Jones disputes the e-mail's

characterization as including "original requests" (intended to refer to the original text of the email,

not to the February 7, 2022 paperwork), there is no dispute she revised her requests from her initial

request for telework every day of the week to a request for telework on Thursdays. (Opp. at 9.)

### 3.   Communications Between Ms. Gibson and Ms. Jackson-Muir and Mr. Brock

In response to SUMF 37, 38, 39, 44, and 47, in which the School Board described Ms.

Gibson's investigation and conclusion that mold had been remediated and her discussions with

Ms. Jackson-Muir regarding Ms. Jones' essential functions, Ms. Jones purports to dispute her

conclusion by claiming the testing had not been "extensive" or performed due to her disability.

(Opp. at 9, 11.) Ms. Jones cites no evidence to dispute what Ms. Gibson learned from Mr. Brock

and Ms. Jackson-Muir regarding testing or regarding Ms. Jones' essential functions. (Opp. at 9-10

(SUMF 37, 39, 44).) And while many of Mr. Brock's tests were performed to address concerns

Ms. Jones expressed before her request for accommodation, Mr. Brock testified nothing he found

during his inspections at Braddock ES would have given him concern even if had known at the

time that an occupant of the room had a lung or breathing issue. (PDX012-D at 114.)

### 4.   Partial Telework and PPE Also Granted as Accommodations

Ms. Jones also fails to create any genuine dispute of fact regarding the additional

accommodations of partial telework and PPE granted to her. (Opp. at 10-11 (SUMF 40, 42, 49).)

While Ms. Jones now may characterize these accommodations as "token or false," there is no

dispute that the accommodations were granted, that she *accepted* them, and that she did not want to

rescind them. (Opp. at 10-11; Def. Ex. 16; Def. Ex. 1 at 137; PTX 005-066.)

**E.  Ms. Jones' Additional Facts Do Not Preclude Summary Judgment.**

While neither this Court's Scheduling Order nor Local Civil Rule 56 "invites or precludes a plaintiff from submitting an alternative statement of facts . . . the focus of the summary judgment analysis is on the defendant's statement of undisputed facts and the plaintiff's requirement to admit the asserted facts or dispute the asserted facts on the basis of admissible record evidence." *King v. Inova Health Care Servs.*, 2020 WL 2108728, *1, n.1 (E.D. Va. May 1, 2020). With respect to the Additional Facts here, they are not supported by sufficient record evidence and, in any event, they do not raise any "material facts" that would be sufficient to preclude summary judgment.

For example, the record evidence cited in Additional Facts 56-57 and 59 does not support that any ongoing construction or alleged lack of safeguards posed threats to Ms. Jones or exposed her to breathable toxins, dusts, and humidity deleterious to her health and disability. (*See* PTX014 at 6-11, 16-17, 19, 21-23, 25, 28, 32, 34-35, 40, 42, 46, 49, 51, 53-55, 57, 59, 61, 68-75, 80 (reflecting isolated instances of HVAC issues and fumes from roofing or trucks, asbestos removal in a hallway in the summer of 2021, Ms. Jones' testimony of debris falling from the ceiling, and a report of workers in the building without masks on one day in February, which was addressed).)

Importantly, Ms. Jones has not designated an expert to testify, nor has she submitted any other evidence, that each or any of these discrete items in the building posed an issue to her health, caused her to breathe toxins or dust, or exposed her to mold. Indeed, contrary to Ms. Jones' suggestion, it is undisputed that each room had its own unit ventilators unconnected to other rooms or hallways in the building. (PTX 012-D at 25-26.) Additionally, the various construction items noted over the course of a year were swiftly resolved, *see* PTX014 at 001-010, 012-019, 020-023, 025, 027-029, 034-037, 039-040, 041-043, 045-061, 063, 065-076, 078-082), including the items referenced in Additional Fact 59, which were resolved prior to Ms. Jones' request for accommodations on January 30, 2022. (Def. Ex. 24 at 74-77.) Because most, if not all, of these

9

isolated issues predate Ms. Jones' requests for accommodation, and because the School Board ensured that Ms. Jones did not work in areas of the building under construction once her pulmonologist recommended that accommodation, these Additional Facts are not material.

Finally as to Additional Fact 58, although the cited record does not seem to relate to this fact, the School Board does not dispute that Ms. Jones made it aware of her air quality and health concerns in Room 38, and that the School Board had granted her request to relocate from that room to her preferred room of 34, as well as provided air purifiers for both rooms, in January 2022, ***prior to*** receiving any request for accommodation. (Def. Ex. 1 at 44; 58-61.)

II.     **Based on the Undisputed Material Facts, the School Board Is Entitled to Summary Judgment as to Ms. Jones' Claim of Failure to Accommodate.**

As noted in the School Board's opening brief, for purposes of summary judgment, the School Board has assumed that Ms. Jones was disabled and that it had notice of her disability. (Mem. in Supp. at 13.) To avoid summary judgment, Ms. Jones was required to produce evidence from which a reasonable jury could find that she could perform the essential functions of her position with a reasonable accommodation, ***and*** that the School Board refused to make an accommodation. *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 165 (4th Cir. 2024) (elements 3 and 4 of her *prima facie* case). As set forth below, Ms. Jones cannot satisfy both remaining elements of her claim, though her failure to satisfy even one is enough to entitle the School Board to summary judgment in its favor.

A.    **The ADA Did Not Require the School Board to Grant Five-Days-a-Week Telework.**

1.    **No Record Evidence Supports Ms. Jones' Contention that the School Board Misunderstood the Scope of Her Request for Telework.**

As an initial matter, no record evidence supports Ms. Jones' claim that the School Board misinterpreted her request as one of "permanent telework." (Opp. at 21; *see e.g.,* Def. Ex. 1 at 124-125 (Ms. Jones testifying that Ms. Gibson advised that the school could not approve "five-day

telework," not "permanent" telework)). And although Ms. Jones initially had inquired as to whether her principal could grant her telework for a few days without a request for accommodation (PTX 005 at 5), Ms. Jones conceded that, by the time she requested an accommodation for a disability, her request no longer was only for a few days. (PTX 012-C at 236 (Ms. Jones testifying that the paperwork she submitted did not ask for only three-and-a-half days of telework)).

In short, at no point does the record suggest that the School Board viewed Ms. Jones' request as one for telework in perpetuity, though Ms. Jones did continue to extend her own request, ultimately to May 31, 2022. (Def. Ex. 20; Dkt. 62-3.) Because Ms. Jones has not proven that she could perform all essential functions of her job while working from home five-days-a-week, even temporarily, Ms. Jones has not, and cannot, satisfy the third element of her *prima face* case.

### 2.  The Undisputed Material Facts Support that Ms. Jones Could Not Perform All Essential Functions of Her Job Via Telework.

Notwithstanding that Ms. Jones bears the burden of proving that she could perform all essential functions of her job with her requested accommodation of telework, five-days-a-week, to survive summary judgment, *Tartaro-McGowan,* 91 F.4th at 165, Ms. Jones has not submitted any evidence sufficient to satisfy this element. Instead, Ms. Jones primarily argues—without record citations—that the School Board did not understand the essential functions of her job. (Opp. at 24.) Yet her Opposition is devoid of any analysis as to her own understanding of her job. (Opp. at 25.) When such analysis *is* performed, Ms. Jones' own evidence is fatal to her claim.

The ADA's implementing regulations outline seven non-exhaustive categories of evidence that inform whether a duty is an essential function. These include:

    (i)     The employer's judgment as to which functions are essential;
    (ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;
    (iii)   The amount of time spent on the job performing the function;
    (iv)   The consequences of not requiring the incumbent to perform the function;
    (v)    The terms of a collective bargaining agreement;

(vi)    The work experience of past incumbents on the job; and/or

(vii)   The current work experience of incumbents in similar jobs.

*Tartaro-McGowan*, 91 F.4th at 165-166 (citing 29 C.F.R. § 1630.2(n)(3)).

As is relevant to factors (ii), (vi), and (vii), Ms. Jones submits evidence that she and the other math and science resource teacher at Braddock ES prepared a job description, which included three main categories of duties: "Support and Strength Instruction," "Meaningful Data Analysis," and "Partner with Teachers *in the Classroom.*" (PTX 017 at 003 (emphasis added).)

Likewise, relevant to factor (iii), (vi), and (vii), the work experience of Ms. Jones in her position reflects her own view that at least *15%* of her duties were best performed in the school building, including intervention for students. (PTX 02-003, Ex. A.) Ms. Jones' assessment that she spent up to 15% of her time on this duty onsite is consistent with her testimony, in which she explained, "when time allowed for me to assess a student, for example, if a student needed to be assessed, if we were missing a score, if a student was absent, *I would definitely support with that*," and that these instances occurred "at random times" and "on occasion" in the classroom or otherwise on site, such as a nook in the hallway. (Def. Ex. 1 at 18, 20-21, 35 (emphasis added).) To the extent Ms. Jones implies that 15% of her job on academic intervention is insignificant, "the percentage of time spent on [a job] function is not dispositive . . . ." *See Marquez v. Costco Warehouse Corp.*, 550 F. Supp. 3d 1256, 1282 (S.D. Fla. 2021) (citing E.E.O.C. Technical Manual § 2.3(a)(3)(d) (landing a flight is an essential function for a pilot though it takes only minutes)).

Likewise, Ms. Jones' concession that her duties of "inventorying ordered math and science materials" were best performed onsite also is consistent with her deposition testimony that she spent most of her day in her resource room, in which room she "managed, ordered, separated, inventoried, and made ready for teachers" math and science resource materials. (PTX 02-003, Ex. A; Def. Ex. 1 at 26.) And while Ms. Jones might work on her computer in the resource room on

12

other tasks for many hours of the day, she testified that when teachers needed materials, they came to her room, she pulled supplies, and she is "sure" she met with them *in person*. (Def. Ex. 1 at 129.)

That aside, the first factor requires examining the *employer's* judgment as to what is essential, and the undisputed record reflects the judgment of Ms. Jones' principal that "a lot of Ms. Jones' job required being around teachers in school to get everything done," (Def. Ex. 3 at 85), and that "Ms. Jones could not meet the needs of the students or teachers from home because her essential functions required attending in-person classes, co-teaching, working directly with students in the classroom setting or one-on-one as needed, and selecting and modeling resources to teachers from the resource room she managed." (Def. Ex. 2 at ¶ 5.)

In light of this record evidence, including Ms. Jones' own testimony and exhibits, Ms. Jones' essential functions included providing academic intervention to students ***onsite*** and assisting teachers in the classroom or in the resource room ***onsite***. As there is ***no dispute that Ms. Jones could not perform these essential functions from home*** (PTX 002 at Ex. A; Def. Ex. 2 at ¶ 2), Ms. Jones has failed to satisfy the third element.

### 3. No Evidence Supports Ms. Jones' Claim that the School Board "Changed Her Job Functions to Include Substitute Teaching" to Avoid Accommodating Her.

In her Opposition, Ms. Jones also alleges—with ***no citation*** to the record—that, "In arguing that substitute teaching was an essential job function, FCPS attempts to change Plaintiff's clear, direct, and Title I mandated essential functions simply to avoid liability for rejecting any reasonable accommodation to Plaintiff." (Opp. at 24-25.) Ms. Jones points to no record evidence that the School Board requested that she serve as a substitute teacher to avoid granting her request for telework. On the contrary, the sole evidence is that, in the spring of 2022, Braddock ES utilized resources teachers as substitute teachers in classrooms due to a staffing shortage and the school's need to provide instruction to students in the classrooms. (Def. Ex. 4 at 158-159.)

13

In support of her argument, Ms. Jones' ***sole*** evidence submitted to dispute that substituting teaching was one of the essential functions of her job is her own declaration, in which she claims not to have had the duties of a substitute teacher. (Pl. Ex. 15 at ¶ 8.) Yet, as noted above, Ms. Jones previously testified during her deposition that, in the spring of 2022, utilizing resource teachers such as herself as substitute teachers had become "a practice at the school." (Def. Ex. 1 at 195.) Ms. Jones' prior deposition testimony also is consistent with Ms. Jones' request on May 31, 2022, to be relieved of her duty of substitute teaching (SUMF 51.) Having conceded that her position as a resource teacher included substitute teaching, Ms. Jones cannot create any genuine dispute of material fact by disputing her prior testimony now. *Barwick,* 736 F.2d at 960.

Finally, even if substitute teaching had not been part of Ms. Jones' job as a resource teacher when she was hired in 2019, the School Board may alter essential functions of a job for business needs. *Tartaro-McGowan v. Inova Home Health, LLC*, 2022 WL 2232190, *5 (E.D. Va. June 21, 2022), *aff'd on other grounds*, 91 F.4th at 166 (2024) (concluding that performing in-home patient visits was an essential function of plaintiff's job during the relevant time of the spring of 2020 due to a staffing shortage created by the Covid-19 pandemic, even if it had not been an essential function prior to that time). As Ms. Jones' own record reflects, Ms. Jones was advised as follows regarding substitute teaching as it pertained to her position in the spring of 2022:

> Although you are not the teacher of record for the class, as a resource teacher you are required to instruct students—this includes instances where the teacher of record is out of the classroom whether it be for a short-term length of time or for the entire school day. Based on the current staffing shortage, it is necessary for you to cover classes; however, please note that your position requires you to work with students in a classroom setting. Substituting is no different from the work that you do on a regular basis in the classroom with students and other teachers.

(PTX 005 at 146-147; *see also* PTX 005-135 (same); Def. Ex. 4 at 158-159 (same).)

Having submitted this record evidence, which is consistent with the School Board's evidence (Def. Ex. 2 at ¶¶4-5; Def. Ex. 4 at 158-159), and having submitted no other admissible

14

evidence to create any genuine dispute as to the fact that substituting teaching was an essential function of Ms. Jones' job as a resource teacher at Braddock ES in the spring of 2022 due to a staffing shortage, Ms. Jones cannot carry her burden of proving that she could perform all essential functions of her job from home during the relevant time. As Ms. Jones cannot satisfy this element of her prima facie case, the School Board is entitled to summary judgment in its favor.

### B. The School Board Reasonably Accommodated Ms. Jones Even If It Did Not Grant Her the Exact Accommodation She Preferred.

Even if Ms. Jones could have performed all essential functions via telework, though she could not, the ADA did not require the School Board to grant the "exact accommodation she requested." *Tartaro-McGowan*, 91 F.4th at 167. Instead, the ADA requires granting *reasonable* accommodations. *Id.* at 171 ("The ADA requires reasonableness, not perfection."). As discussed in the School Board's opening brief and below, Ms. Jones cannot satisfy the fourth element of her prima facie case by proving the School Board refused to reasonably accommodate her disability.

### 1. Dr. Halabi's Recommendation Was to Avoid Exposure to Mold, and the School Board Understood and Ensured as Much.

In her Opposition, Ms. Jones contends that the School Board's position that it granted the accommodations recommended by her pulmonologist, Dr. Halabi, is contradicted by Dr. Halabi and the parties' correspondence, referring to a "post-it note" on one set of paperwork supporting her request for an accommodation. (Opp. at 16.) Ms. Jones cannot misconstrue or omit relevant portions of Dr. Halabi's paperwork to create a genuine dispute of fact or avoid summary judgment.

In Dr. Halabi's paperwork, he made clear that his recommendation was to "ensure no mold exposure at work." (Def. Ex. 11, 13, and 20; Dkt. No. 62-1, -2, -3.) Ms. Jones omits entirely that Dr. Halabi's recommendation of telework was for the stated purpose of "avoid[ing] mold exposure at wor*k*" and only as an ***alternative*** to his recommendation that the School Board "ensure no mold exposure at work." (*Id.*) While one set of the paperwork contained a post-it note stating "Telework

15

until date – thru end of March 3/31/2022," nothing in the post-it note indicated that the note's mention of telework referred to anything other than Dr. Halabi's recommendation of telework *as an alternative* to ensuring no mold exposure. (PTX 13 at 014, 016.) In any event, whether Dr. Halabi had not wanted Ms. Jones to return to work at all until March 31, 2022, as reflected in Section 6 of the form, or whether he wanted her to telework full-time until March 31, 2022, as arguably suggested by an unsigned post-it note, is not material because his sole stated reason for either of his recommendations was "to avoid mold exposure at work." (PTX013 at 16.)

Upon receiving Dr. Halabi's recommendation that Ms. Jones avoid mold exposure at work, Ms. Gibson made inquiries and learned that the only mold found in her workspaces at Braddock ES had been on the framing of shelves and under one small table in Room 38 the prior summer, in June 2021, and that the School Board already had remediated that mold in 2021 and granted Ms. Jones' requests for air purifiers and to relocate from Room 38 in January 2022. (SUMF 17-22, 24, 37-38.) Ms. Gibson also spoke to FCPS's environmental engineer, Mr. Brock, and reviewed his Indoor Air Quality reports, which reflected that the two workspaces then-utilized by Ms. Jones (Rooms 34 and 38) were free of mold in November and December 2021 as well as January 2022. (SUMF 38; Def. Ex. 9; PTX005 at 044.) Ms. Gibson also confirmed that Mr. Brock was continuing to inspect Ms. Jones' workspace to ensure no mold issues. (SUMF 37-38; Def. Ex. 10.)

In response, Ms. Jones has submitted *no* record evidence of mold discovered in her workspaces in 2022. Thus, the undisputed record reflects only that the School Board reasonably complied with Dr. Halabi's recommendation to "ensure no mold exposure at work," and, as such, it needed not reach the *alternative* recommendation of telework "to avoid mold exposure at work." Where, as here, an employer has chosen an accommodation that is "reasonable,"—*i.e.*, remediation of mold, ongoing inspections, air purifiers, and relocation to another workspace—"even if not perfect, [the Court's] inquiry is at an end . . . ." *Tartaro-McGowan*, 91 F.4th at 167.

16

### 2. Although the School Board Had Remediated Mold and Relocated Ms. Jones, It Granted Her Additional Accommodations of Partial Telework and PPE.

In addition to taking steps to ensure no mold exposure, Ms. Jones' principal also reviewed Ms. Jones' essential job functions and granted her the amount of telework that would still enable Ms. Jones to perform the essential functions of her job as well as additional PPE to address any concerns relating to air quality or Covid-19. (SUMF 39; Def. Ex. 3 at 85-86; Def. Ex. 4 at 54, 147; Def. Ex. 17; *see also* PTX 005 at 047, 088.) Contrary to Ms. Jones' argument in her Opposition (Opp. at 26), there can be no genuine issue as to the fact that "limited telework" one morning a week from mid-February to mid-April and the provision of additional PPE were, in fact, additional accommodations granted to her.

Indeed, from the record, it is apparent that these two accommodations had value to Ms. Jones. Not only did Ms. Jones expressly ***accept*** these accommodations in February 2022 (SUMF 41; Def. Ex. 16), but a couple weeks later, on March 3, 2022, after HR asked whether she wished to rescind the accommodations and continue the interactive process, including by considering reassignment to another school, Ms. Jones replied, "I do not wish to decline my PPE accommodation or Thurs. morning CLT remote work, and I never insinuated that I wanted to rescind my accommodations despite how it sounds in the response provided." (PTX 005-066.)

In light of this response from Ms. Jones, it is incredible to now suggest that these accommodations of limited telework and PPE were but "token" accommodations or that they were "forced" upon her. (Opp. at 26.) While limited telework and PPE may not have been the "exact accommodations" Ms. Jones wanted, the ADA does not require the School Board to grant her the exact accommodations requested. *Tartaro-McGowan*, 91 F.4th at 167. When these additional accommodations are considered in light of the School Board's other actions to ensure no mold exposure, Ms. Jones cannot prove that the School Board failed to reasonably accommodate her.

**3.   That the School Board Already Had Relocated Ms. Jones Out of the Portion of the Building under Construction in April 2022 Is Not Immaterial to Dr. William's Recommendation to So Relocate Her.**

As reflected in the record, in late April, HR received a third set of paperwork, further extending Ms. Jones' recommended return-to-work, without restrictions, date to May 31, 2022. (Def. Ex. 20; Dkt. 62-3.) Like Dr. Halabi's prior requests, the stated reason remained, "ensure no mold exposure at work." *Id.* Given Ms. Gibson's understanding that Ms. Jones workplace was free of mold and that she had been relocated out of Room 38 as discussed above, Ms. Gibson contacted Mr. Halabi's office to provide Dr. Halabi's office with air quality reports and seek clarification as to whether Dr. Halabi was still requesting accommodations "due to workplace mold." (SUMF 47; *see also* Plaintiff's submitted exhibits at PTX 005 at 89, 92.) In response, HR received a letter from a different pulmonologist, Dr. Williams, dated May 12, 2022, that explained:

> Initially it was thought that exposures to ***mold alone*** may have caused some issues as the patient had evidence of mold exposure at the time of her bronchospasm. ***Her workplace has had a mold abatement*** . . . .

(Def. Ex. 21 (emphasis added).) Given the mold abatement, Dr. Williams suggested significant dust may be an issue and recommended that Ms. Jones "work from home until her workplace is dust and mold free ***or*** she is relocated to an area where no construction is taking place." (*Id.*)

In response to Dr. Williams' new recommendation, the undisputed record reflects that Ms. Gibson inquired as to whether Braddock ES could relocate Ms. Jones outside of areas under construction and confirmed that—the month before, in mid-April 2022—Ms. Jones already had been relocated and that she would not be required to work in the old part of the building then-under construction. (SUMF 49; Def. Ex. 22; *see also* PTX 005 at 120 (confirming that, consistent with Dr. Williams' recommendation, Ms. Jones had been relocated and classes no longer were being held in the old building), PTX 005 at 135 (confirming that all of Ms. Jones' work was to be performed either in the trailers or in the newly constructed building as an accommodation).)

18

Ms. Jones submits *no* evidence that she was asked to work in any area under construction. Instead, she points to maintenance issues addressed in the new part of the building after May 16, 2022, none of which reflects any concern of dust or mold in her workspaces. (*See e.g.,* PTX 014 at 6 (condensation drain leak in one classroom), 8 (sanitary line required snaking) 9 (sink in a girls' bathroom leaking), 10-11 (ERU unit successfully restarted in response to one room feeling hot).) Notably, Ms. Jones does not provide record evidence that she worked in any of the areas in which these maintenance items were addressed, or that she ever asked to be relocated out of trailer A-3 or any classroom in the newly constructed building after May 12, 2022. Instead, the *sole* record evidence, including several exhibits submitted by Ms. Jones, reflects that the School Board complied with Dr. Williams's recommended accommodation by ensuring that Ms. Jones would not work in an area of the building under construction after May 16, 2022. Thus, once again, where, as here, an employer has chosen an accommodation that is reasonable,"—*i.e.*, relocation to areas of the building not under construction as recommended by the employee's pulmonologist—"even if not perfect, [the Court's] inquiry is at an end." *Tartaro-McGowan*, 91 F.4th at 167.

### 4.   The School Board Granted All Requested Leave as an Accommodations.

Finally, to the extent Ms. Jones contends that her pulmonologist wanted her to avoid the building at all costs, the School Board offered Ms. Jones leave, and it is undisputed that the School Board granted every request for leave that Ms. Jones made in the spring of 2022. (SUMF 53 (not disputed).) First, on February 7, 2022, as soon as Ms. Jones advised Ms. Gibson that her pulmonologist would be sending over paperwork, but before it had been received, Ms. Gibson informed Ms. Jones by email: "If you are requesting accommodations for tomorrow through the end of the week, then you may take leave if you are unable to report to work." (Def. Ex. 12.)

Then, on February 17, 2022, upon learning that Ms. Jones had returned to work prior to her pulmonologists' recommended return-to-work date of February 28, 2022 (Def. Ex. 11; Dkt. 62-1),

it is undisputed that Ms. Gibson discussed with Ms. Jones that Ms. Jones could contact the Office of Benefits Services for short-term disability benefits, leave, and family medical leave if she was unable to report to work. (SUMF 34; Pl. Resp. to SUMF 34.) Curiously, though this communication from Ms. Gibson to Ms. Jones occurred during the interactive process, Ms. Jones now claims, without citation to the record, that this offer regarding leave was "inapplicable to the accommodation process." (Pl. Resp. to SUMF 34.) That Ms. Jones chose not to request leave because she did not want to "get behind" (Opp. at 19) does not render immaterial that the School Board offered and granted all requests for leave in the spring of 2022 as accommodations.

As leave would have enabled Ms. Jones to be away from the building entirely for a few weeks as Dr. Halabi initially recommended (Def. Ex. 11 at Section 6), leave fits squarely into the category of permissible, unpaid leave as a reasonable accommodation. *Hannah v. United Parcel Serv.*, 72 F.4th 630, 636 (4th Cir. 2023) (finding employer had accommodated employee with unpaid leave to allow him time to recover and return to full duty). Contrary to Ms. Jones' contention, the ADA simply does not require the School Board to settle for paying Ms. Jones full time to perform only a part—and admittedly not all—of her essential functions from home instead.

As the School Board granted Ms. Jones reasonable accommodations, including remediation of mold, ongoing mold inspections, air purifiers, relocations first out of a room with a history of mold and subsequently out of the building then-under construction, additional PPE, limited telework for nearly two months, and leave ***every time it was requested***, Ms. Jones cannot satisfy her burden of proving on this record that the School Board refused to make accommodations as required by the ADA. As a result, the School Board is entitled to summary judgment in its favor.

## <u>Conclusion</u>

For the foregoing reasons, Defendant Fairfax County School Board, by counsel, respectfully requests that this Honorable Court grant its Motion for Summary Judgment.

Respectfully submitted,

FAIRFAX COUNTY SCHOOL BOARD
By Counsel

Date:  March 21, 2024

BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)

By:    _____/s/ Laurie L. Kirkland_____
       Laurie L. Kirkland, VSB No. 75320
        lkirkland@bklawva.com
       Dana Leinbach, VSB No. 95866
        dleinbach@bklawva.com
       *Counsel for Defendant Fairfax County*
       *School Board*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Seth James B. Obed, Esquire
> Robert M. Bohn, Esquire
> OBED LAW, PLLC
> 429 North Saint Asaph St.
> Alexandria, VA 22314
> *Counsel for Plaintiff*

   ___/s/ Laurie L. Kirkland_____
   Laurie L. Kirkland, Esq.
   Virginia State Bar No. 75320
   BLANKINGSHIP & KEITH, P.C.
   4020 University Drive, Suite 300
   Fairfax, Virginia 22030
   Phone: 703-691-1235
   Fax: 703-691-3913
   lkirkland@bklawva.com
   *Counsel for Defendant Fairfax County*
   *School Board*

21